In re Chris STARR, Debtor.

Bankruptcy No. 85–21060.

United States Bankruptcy Court,
W.D. New York.

Aug. 31, 1988.

Hugh S. Silberstein, Rochester, N.Y., for debtor.

Robert J. Hirsch, P.C. by Richard S. Tubiolo, Rochester, N.Y., for Regional Transit Service.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This case was commenced on October 18, 1985, by the filing of a bankruptcy petition in Chapter 13. On January 8, 1986, a creditor, Regional Transit Service ("RTS"), filed a $5,163.20 claim in the case, and on February 26, 1988, the Debtor objected to the claim. A hearing on the objection was held May 23, 1988. Following are the Court's findings of fact and conclusions of law.

The Debtor owned and operated an unincorporated retail gift shop, Silver Star Trading Company [1] which, in 1984, began selling RTS bus passes on consignment. The arrangement was in the nature of a bailment. 9 NY Jur.2d, Bailments and Chattel Leases § 3. The bailment of bus passes from RTS to the Debtor was transacted roughly as follows:

One hundred monthly bus passes would be delivered to the Debtor by RTS. The delivery would take place late in the month preceding the month during which the passes would be valid. For instance, on or about April 25, 1984, the Debtor was delivered one hundred May bus passes, and on or about May 25, 1984, the Debtor was delivered one hundred June passes. RTS required payment for passes sold, or the return of unsold passes, by the fifteenth of the month following delivery. The Debtor, however, fell into the habit of making pay-

---

**1.** The Debtor acknowledged "[t]hat Silver Star Trading Company has no independent exist-ence, other than [him]self." (Plaintiff's Exhibit No. 9; Transcript pp. 52–53, 61–62).

ments late and, as of June 6, 1984, owed RTS $2,820.00 for ninety-four May passes sold[2] and $1,800.00 for sixty June passes sold.

It was the Debtor's practice to segregate bus pass proceeds from other cash sales made at the store and keep the former in an unlocked cash box. The cash box was located behind a bank of display cases at the store in a position which allowed the Debtor to monitor the passes and proceeds while maintaining a vigil of the store's contents and customers. The Debtor routinely removed the daily accumulation of bus pass proceeds from the cash box and secured them in a safe at his home. On June 6, 1984, the Debtor transferred the aggregate May and June proceeds, amounting to $4,620.00, from the safe at his home to the unlocked cash box in the store. With this lump sum he intended to purchase a money order with which to pay RTS. The money order was never purchased.

The Debtor testified that on June 7, 1984, a group of six youths entered his store acting suspiciously. Having been confronted with similar situations in the past, the Debtor recognized that the group posed the threat of shoplifting. When group members dispersed throughout the store, the Debtor's fears began to materialize. To create a diversion, several members of the group asked for the Debtor's assistance. Simultaneously, other group members went to areas of the store beyond the Debtor's watchful eye. Concerned that a theft was impending, the Debtor abandoned the display case area and left the cash box unlocked and unattended. When the group left, the Debtor discovered various items of merchandise missing. He also discovered the cash contents of the strongbox gone.[3]

On June 8, 1984, the Debtor filed a police report describing the incident. In the report, the Debtor gave a vague description of the suspects and could not state with certainty that it was they who had taken the bus pass money. The report stated that the unlocked cash box was located in full view and within reach from in front of the display case. The Debtor signed the report, verifying the accuracy of its statements, but testified at the hearing that the cash box was not within reach from in front of the display case.

Disposition of the instant claim and objection pends the resolution of three issues. First, in what relationship did the Debtor and RTS stand based on the transactions in which they had engaged? Second, based on the nature of the relationship in which the parties stood, to what degree of care was the Debtor dutybound in safeguarding the bus pass proceeds? Finally, did the Debtor's conduct comport with that degree of care?

The Debtor was not paid a fee or commission by RTS for selling the passes. Nor was he paid a fee for storing the passes or the proceeds therefrom. The Debtor did, however, believe that by selling passes he would increase customer traffic into his store. Accordingly, the Debtor used a window display to advertise the sale of bus passes. Under circumstances such as these, the weight of authority indicates that a bailment for the mutual benefit of the parties is created because the bailee entered into the relationship perceiving that benefits would accrue. 8 Am.Jur.2d Bailments § 21 (1980). In New York the rule of law for determining whether a bailment is for the mutual benefit of the parties is stated as follows:

> In determining whether a bailment is gratuitous or one for the mutual benefit of the parties, the distinguishing feature is not the character or certainty of the compensation, but whether the bailment was accepted by the bailee for the purpose of deriving some profit or benefit. The nature and amount of the compensation are immaterial, as the law will not inquire into its sufficiency or the certainty of its being realized by the bailee.

---

2. Inexplicably, without remitting payment for the ninety-four passes sold, the Debtor returned the six unsold May passes to RTS on May 15, 1984.

3. While the cash proceeds were taken, the forty unsold June passes, ironically, were not. The latter were ultimately returned to RTS.

9 NY Jur.2d, Bailments and Chattel Leases § 6 (1980).

Based on the foregoing, the Court concludes that the parties stood in a relationship of bailor and bailee for mutual benefit. As such, the Debtor was dutybound to exercise ordinary care, i.e., the degree of care which would be expected of a reasonable person acting under similar circumstances, in safeguarding the bus pass proceeds. *Aronette Mfg. Co. v. Capitol Piece Dye Works,* 6 N.Y.2d 465, 468, 190 N.Y. S.2d 3611, 160 N.E.2d 842 (1959); *Castner v. Insurance Co. of North America,* 40 A.D.2d 1, 3, 337 N.Y.S.2d 52 (1973).

■ Several key factors indicate that the Debtor failed to comport his conduct with the standard of ordinary care. First, the Debtor testified that he had experienced incidences of shoplifting in the past. This should have alerted him to the inherent danger of keeping the May and June bus pass proceeds at his store. Second, the Debtor brought the proceeds to the store on June 6, 1984, with the intention of purchasing a money order that day, but failed to do so. Third, the money which the Debtor deigned sufficiently at risk to require it being kept in a safe at his residence was stored in an unlocked cash box while at the store. Fourth, the unlocked cash box was, at worst, within arm's reach of customers entering the store and, at best, within full view. Fifth, when a group of suspicious youths entered the store the Debtor did nothing to secure the unlocked cash box and its contents, but instead left them unattended.

■ Generally, loss by theft is an acceptable defense for deflecting liability from a bailee for the loss of bailed goods. The defense fails, however, when the bailor preponderates in proving that the bailee's negligence contributed to the theft. *Peralta v. Port of New York Authority,* 68 Misc.2d 302, 307–08, 326 N.Y.S.2d 776 (N.Y.Civ.Ct. 1971). Here, it is abundantly clear that the Debtor's disregard for the incipient danger of theft on June 7, 1984 rendered the bus pass proceeds an easy target. Accordingly, under State law, he is liable to RTS for the amount stolen, $4,620.00, plus interest

through the date of filing. The Debtor's objection is denied, the RTS claim is allowed in full, and it is so ordered.

## ORDER

In accordance with the attached Findings of Fact and Conclusions of Law, it is hereby

ORDERED that the Debtor's objection to the claim of Regional Transit Service is denied, and it is further

ORDERED that the Regional Transit Service claim is allowed in full plus interest through the date of filing.